### THE DELAWARE.

### STANDARD TRANSP. CO. v. CLYDE S. S. CO.

### THE SOCONY NO. I.

### CLYDE S. S. CO. v. STANDARD TRANSP. CO.

District Court, S. D. New York.

Sept. 14, 1932.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for the Socony No. 1.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (C. I. Clark and P. Pearson Shortridge, both of New York City, of counsel), for the Delaware.

FRANK J. Coleman, District Judge.

The collision between the steamship Delaware and the barges in the hawser tow of steamtug Socony No. 1 occurred November 22, 1927, at about 6 p. m. at about the middle of the Hudson river off Liberty street, Manhattan. The Delaware, which was a coastwise vessel, was proceeding to sea from her berth at Tenth street; and tug Socony No. 1, with three large oil barges abreast on double hawsers, was en route from Constable Hook to Albany. The night was dark but clear and the wind was negligible.

The vessels were on approximately opposite courses, and though there was considerable traffic in the river there was ample room for them to navigate with reference to each other so as to pass safely. The theory of the Socony No. 1 is that the Delaware, while safely passing the tug on the starboard side, took a sudden and drastic turn to starboard which brought her into collision with the tow. The Delaware contends that having reversed her engines she was about at a standstill when the tug with her tow out of line to starboard pulled the barges into collision with the Delaware's bow. Neither vessel made any change in course from the time they sighted each other until they were at the point of passing; and thereafter the tug Socony No. 1 made no change of course, but there is a sharp conflict in the testimony as to whether the Delaware did so by turning to starboard.

It is difficult for me to see how the Delaware could escape the charge of negligence

even if every word of her witnesses' testimony were true. She proceeded down the river more than a mile until she, according to them, was in the path of the barges which they said were trailing off to starboard from the tug. Each of the barges had a bright light on the bow and on the stern, but the men on the Delaware did not see them until the moment of the collision. The tug had three bright staff lights which gave fair warning that she had a hawser tow. No adequate reason is given for the failure to locate the barges, and the suggested one that their lights were made invisible by a brightly lighted ferryboat crossing the river in back of them is manifestly insufficient because the ferryboat could not have maintained a constant relative position to the barges. There is no claim that the barges suddenly swung to starboard, and even if the Delaware's version of the accident were true, there was nothing to justify her navigating so close to them as to create the danger.

But the Delaware's version is strongly against the weight of evidence. The barges were not swinging off to starboard, but were in line behind the tug. This is supported not only by the testimony of the witnesses from the tug and barges, who made a very much better impression upon me than did the witnesses from the Delaware, but also by the entirely disinterested witnesses from the ferryboat and the tug Washington which were in the vicinity. The story of the Delaware's witnesses was weakened substantially by their admissions that they did not see the barges at all until almost the instant of the collision. Furthermore, in the nature of things it is difficult to see why the tow should have swung out of line; the tug had maintained a steady course almost directly up the center of the river, and while the tide was flood, there were no irregularities of the current which might have had a diverting influence.

As to the course followed by the Delaware, there is an even greater preponderance of evidence that the Delaware's version is untrue and that she did turn dramatically to starboard. The same witnesses testified upon this point except the captain of the tug Washington, who was not in a position to notice whether she did or not. Furthermore, if the barges were not out of line there is no other way of accounting for the collision because the Delaware passed the tug Socony No. 1 safely at a distance of about 150 feet. The Delaware had reversed her engines at full speed because of the ferryboat in back of the barges, and unquestionably this

tended to swing the steamer to starboard. Her third officer, who was at her wheel, was entirely unused to her since he had just been employed and had never before steered her. He was navigating with reference to the ferryboat rather than to the Socony's tow, and neither he nor the other men on the Delaware were aware of the location of the barges until they were almost in contact. It is not at all unlikely that in an effort to go under the stern of the ferryboat he overlooked the intervening Socony barges and increased the starboard turn which was partly caused by the reversing of the engines. But whatever was the reason for the turn to starboard, I am convinced that the great weight of the evidence requires a finding that it occurred and that it negligently caused the collision.

As to whether the Socony No. 1 was negligent, also, it appears that she sighted the Delaware at a distance of about a mile and a half, at which time the vessels were on courses which the Socony helmsman estimated would bring about a starboard to starboard passing. The Socony steadfastly pursued her course without deviation, with her tow directly behind her, and blew two signals of two blasts each at distances of three-fourths and one-fourth of a mile from the Delaware, but received no answer to either. The Delaware did pass the tug at a distance of about 150 feet to starboard and would have passed the tow at a distance of about 100 feet if she had not made the turn above mentioned.

There was never presented a crossing situation. The Socony was headed very slightly towards the Jersey shore, and neither she nor her tow was at any time on the port side of the Delaware's course up to the time the Delaware took the sheer. There is a great deal more doubt as to whether a head-on situation was not presented which would have required a port to port passing under the rules. The master of the Socony testified that some time after the second signal had been blown he could see a glimmer of the Delaware's port running light, at which time the vessels were probably less than one-quarter mile apart. No reason is suggested why this red light was not visible from the time the Delaware was first sighted at a distance of about a mile and a half. The Socony and her tow were therefore during that period not clear of the Delaware's path. Yet the tug did nothing to effect a port to port passing nor to pull more towards the Jersey shore so as to accomplish a safe starboard passing. The tug kept on her course without any deviation, though the margin of safe-

ty for a starboard passing was so slight that at a distance of less than a quarter of a mile the Delaware's red light was visible. The make-up and dimensions of the tow should be considered in this connection; the barges had a total width of 120 feet and thus extended about 50 feet on each side beyond the lines of the tug; they were 250 feet long; the hawsers were 270 feet long; and the total length of the flotilla was 618 feet. To navigate such a tow so close to an on-coming steamer does not seem to me due caution.

While it is true that the tug could not have safely turned radically towards the Jersey shore when the vessels were close together, because that maneuver would have had a tendency to throw the barges to starboard in the path of the Delaware, the deviation might have been made at a sufficient distance from the steamer to have prevented that result. No circumstance was proved to justify the failure, except that the helmsman on the Socony believed that he was sufficiently off the course of the Delaware to make it prudent to continue. The testimony of his superior, however, that the Delaware's red light was still visible at less than a quarter of a mile, together with the dimensions of the tow, shows that this assumption was unjustified. It must be concluded therefore that the Socony also was negligent though not so flagrantly as the Delaware.

Settle decrees in accordance with above findings.